**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**
Bankruptcy Judge Joseph G. Rosania, Jr.

| | |
|---|---|
| In re: | |
| AVI SCHWALB, SSN: xxx-xx-0747, | Case No. 25-12666-JGR Chapter 7 |
| Debtor. | |
| BRIANNA TANNER, DOUGLAS TANNER, | Adv. Pro. No. 26-01075-JGR |
| Plaintiffs, v. | |
| AVI SCHWALB, | |
| Defendant. | |

**ORDER DENYING MOTION TO DISMISS COMPLAINT**

THIS MATTER is before the Court on Defendant Avi Schwalb's Motion to Dismiss Complaint filed by Avi Schwalb ("Defendant") on April 2, 2026 (Doc. 4) and the Response filed by Brianna Tanner and Douglas Tanner ("Plaintiffs") (Doc. 6).

**INTRODUCTION**

When evaluating a motion to dismiss, a court may properly consider exhibits attached to the complaint, all materials referenced in the complaint, and materials subject to judicial notice. *Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008). The court may also consider documents not attached to the complaint or incorporated by reference, but that are "integral to the complaint." *Official Comm. of Unsecured Creditors v. Bay Harbour Master Ltd. (In re BH S&B Holdings LLC)*, 420 B.R. 112, 132 (Bankr. S.D.N.Y. 2009). *See also Tal v. Hogan*, 453 F.3d 1244, 1264-65 n.24 (10th Cir. 2006) ("facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment"); *St. Louis Baptist Temple v. F.D.I.C.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").

Defendant filed a Chapter 11 bankruptcy case in this District on May 2, 2025, Case No. 26-12666-JGR (the "Bankruptcy Case").  On the filing date, Defendant was embroiled in significant criminal and civil litigation.  The Bankruptcy Case was filed on the eve of a state court civil jury trial.

On March 20, 2025, a Statewide Grand Jury Superseding Indictment was filed in the Denver District Court, Case No. 2025CR15038.  Defendant was indicted on 47 counts of 51 counts including violations of the Colorado Organized Crime Control Act and theft for perpetrating a fraudulent home remodeling scheme in which the Defendant and others received customer deposits for home remodeling, failed to complete work, left homes uninhabitable, and misused the deposits for personal gain.

The Defendant was also faced with approximately twenty lawsuits and foreclosure actions from either homeowners who were pursuing tort and contract claims or lenders to the rental properties who claimed the Defendant collected rents from such properties and failed to pay the mortgages.

The Chapter 11 reorganization case was converted to a Chapter 7 liquidation case on October 30, 2025, over the Defendant's objection.

The Defendant appealed the conversion order to the United States District Court for the District of Colorado (25-CV-3624).  He sought a stay pending appeal from this Court, which was denied on December 2, 2025 (Bankruptcy Case Dkt. 326).  The United States District Court for the District of Colorado also denied the Defendant's motion for a stay pending appeal.  The appeal is pending and has been fully briefed.

After a nearly three-week long trial, on or about February 20, 2026, Defendant was found guilty on all 47 counts asserted in the criminal indictment.

Plaintiffs commenced prepetition litigation in the Jefferson County District Court Case No. 21CV31646 against Schwalb Builders, LLC; Sean Schwalb; Avi Schwalb; and Avi's Remodeling and Contracting, LLC.  On September 2, 2025, Plaintiffs obtained relief from stay in the Defendant's main bankruptcy case to proceed with the liquidation of the claims.

On or about April 2, 2026, Plaintiffs obtained a default judgment as to the Defendant and Avi's Remodeling and Contracting, LLC awarding total economic damages in the amount of $460,665.00, plus pre-petition interest in the amount of $29,246.97, and post-petition interest; and non-economic damages in the total amount of $2,100,000 plus pre-and post-judgment interest.

## THE DISCHARGEABILITY ADVERSARY PROCEEDINGS

Eight separate adversary proceedings have been filed against the Defendant seeking determinations of non-dischargeability under various provisions of 11 U.S.C. § 523(a):

Case No. 26-01024-JGR   *Kevin Collins and Noelle Collins v. Avi Schwalb*
Case No. 26-01030-JGR   *Jill Bubenik and Brandon Bubenik v. Avi Schwalb*
Case No. 26-01031-JGR   *Uzi Berger v. Avi Schwalb*
Case No. 26-01032-JGR   *Jeffrey Swanson v. Avi Schwalb*
Case No. 26-01033-JGR   *Fannie Mae v. Avi Schwalb*
Case No. 26-01034-JGR   *David Amster-Olszewski and Kirby Jones v. Avi Schwalb*
Case No. 26-01075-JGR   *Brianna Tanner and Douglas Tanner v. Avi Schwalb*
Case No. 26-01103-JGR   *Karen Davidson and Benjamin Davidson v. Avi Schwalb*

With the exception of Case No. 26-01103-JGR, which was filed on April 17, 2026, and was not served until April 21, 2026, Defendant has moved to dismiss each of the adversaries under Fed.R.Civ.P. 12(b)(6) as incorporated by Fed.R.Bankr.P. 7012 for failure to state a claim.

## LEGAL STANDARD

To survive a motion to dismiss under Fed R. Civ. P. 12(b)(6) (as incorporated by Fed.R.Bankr.P. 7012), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. *Morse v. Regents of the Univ. of Colo.*, 154 F.3d 1124, 1126–27 (10th Cir. 1998). However, the Court need not accept legal conclusions as true. *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id.* at 1191. The "plausibility" standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible. *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

A claim is considered "plausible" when the complaint contains facts which allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Plausible" does not mean "probable," although the plaintiff must show that its entitlement to relief is more than speculative. *Id.*; *Twombly*, 550 U.S. at 555. "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal quotations and citations omitted). However, "Specific facts are not necessary; the [complaint] need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 544). Still, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

3

The Tenth Circuit has stated:

> As we have emphasized, "[g]ranting [a] motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1276 (10th Cir. 2023) (quoting *Dias v. City & Cnty. Of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009)) (second alteration in original). We impose a "low bar for surviving a motion to dismiss," *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1034 (10th Cir. 2020), and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely," *Id.* (quoting *Dias*, 567 F.3d at 1178).

*Brown v. City of Tulsa*, 124 F.4th 1251, 1264 (10th Cir. 2025).

## THE MOTION TO DISMISS

Plaintiffs' 34-page, 171-paragraph Complaint raises the following claims for relief:

Count I Determination That Defendant is an Alter-Ego of Avi's Remodeling & Schwalb Builders; Count II Non-Dischargeability Under 11 U.S.C. § 523(a)(2)(A)(Fraud & False Representation); Count III Non-Dischargeability Under 11 U.S.C. § 523(a)(4)(Fraud and/or Defalcation Breach of Fiduciary Duty Under C.R.S. § 38-22-127); Count IV Non-Dischargeability Under 11 U.S.C. § 523(a)(6)(Willful and Malicious Injury); Count V Non-Dischargeability Under 11 U.S.C. § 523(a)(6)(Violation of the Colorado Consumer Protection Act (C.R.S. § 6-1-113)); and Count VI Non-Dischargeability Under 11 U.S.C. § 523(a)(6)(Civil Theft (C.R.S. § 18-4-401)).

Defendant's Motion argues the Complaint should be dismissed for failure to state a plausible claim for relief.

Defendant is acting as a pro se litigant and the Court has liberally construed and held the Defendant to a less stringent standard than formal pleadings drafted by lawyers. *See Haines v. Kerner*, 404 U.S. 519, 520-521, 30 L. Ed. 652, 92 S. Ct. 594 (1972).

The Motion and Replies appear to be ghostwritten in violation of the spirit, if not the letter, of L.B.R. 9010-1(c)(3).  The Motion uses "the right words" incorporating the legal standards for motions to dismiss under Fed.R.Civ.P. 12(b), but fails to accurately apply the law to the factual allegations set forth in the Complaint.

The Rule 12(b)(6) inquiry is not an evidentiary inquiry.  The Court does not weigh evidence, resolve factual disputes, decide credibility, or determine whether the plaintiff will ultimately prevail.  The question is whether the complaint, viewed through the Rule 12(b)(6) lens, is legally sufficient to proceed.  A complaint may survive dismissal even if

proof of the alleged facts appears improbable, so long as the well-pleaded allegations raise the right to relief above the speculative level.

## COUNT I DETERMINATION THAT DEFENDANT IS AN ALTER-EGO OF AVI'S REMODELING & SCHWALB BUILDERS

The Colorado Supreme Court has explained, under certain circumstances personal liability can be imposed for corporate acts:

> Traditional piercing penetrates the corporate veil and imposes liability on individual shareholders for the obligations of the corporation. Individual liability is appropriate when the corporation is merely the alter ego of the shareholder, and the corporate structure is used to perpetuate a wrong. In such extraordinary circumstances, the courts may ignore the independent existence of the business entity and pierce the corporate veil to achieve an equitable result.

> To determine whether piercing the corporate veil is appropriate, the court must first inquire into whether the corporate entity is the alter ego of the shareholder. Only then will actions ostensibly taken by the corporation be considered acts of the shareholder. An alter ego relationship exists when the corporation is a "mere instrumentality for the transaction of the shareholders' own affairs, and there is such unity of interest in ownership that the separate personalities of the corporation and the owners no longer exist."

> In establishing whether such unity of interest exists as to disregard the corporate fiction and treat the corporation and shareholder as alter egos, courts consider a variety of factors, including whether (1) the corporation is operated as a distinct business entity, (2) funds and assets are commingled, (3) adequate corporate records are maintained, (4) the nature and form of the entity's ownership and control facilitate misuse by an insider, (5) the business is thinly capitalized, (6) the corporation is used as a "mere shell," (7) shareholders disregard legal formalities, and (8) corporate funds or assets are used for noncorporate purposes. These factors reflect the underlying principle that the court should only pierce when the corporate form has been abused.

> The court's second inquiry is whether justice requires recognizing the substance of the relationship between the shareholder and corporation over the form because the

5

corporate fiction was "used to perpetrate a fraud or defeat a rightful claim."  Only when the corporate form was used to shield a dominant shareholder's improprieties may the veil be pierced.

Third, the court must evaluate whether an equitable result will be achieved by disregarding the corporate form and holding the shareholder personally liable for the acts of the business entity.  Achieving an equitable result is the paramount goal of traditional piercing of the corporate veil. A claimant seeking to pierce the corporate veil must make a clear and convincing showing that each consideration has been met.

*Connolly v. Englewood Post No. 322 VFW of the United States, Inc. (In re Phillips)*, 139 P.3d 639, 644 (Colo. 2006) (internal citations omitted).

Paragraphs 87-102 in the Complaint include specific well-pleaded allegations showing Schwalb Builders and Avi's Remodeling are alter-egos of one another and the Schwalb Builders is an alter-ego of the Defendant.

Paragraphs 103-105, incorporating the criminal indictment and pre-petition litigation, include well-pleaded factual allegations that the Defendant misused the corporate shell to perpetuate wrongs.

Count I incorporates specific factual allegations of conduct set forth in paragraphs 13-25, 27, and 73-75.

The Complaint includes well-pleaded factual allegations that the corporation was (a) a mere alter-ego of the shareholder; (b) the corporate structure was used to perpetrate a wrong; and (c) the piercing of the corporate veil would lead to an inequitable result.  The Complaint plausibly states a claim that the corporation was a mere instrumentality for the transaction of the Debtor's own affairs, and there is such unity of an interest in ownership that the separate personalities of the corporation and the Defendant no longer exist.

The Complaint plausibly states a claim for relief that the Defendant is an alter-ego of Schwalb Builders and Avi's Remodeling and is therefore personally liable for the corporations' obligations.

## COUNT II NON-DISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(2)(A)
## (FRAUD & FALSE REPRESENTATION)

Section 523(a)(2)(A) provides, in pertinent part, that a Chapter 7 debtor is not discharged from any debt for money or an extension of credit to the extent that such debt was obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

Under 11 U.S.C. § 523(a)(2)(A), a debt obtained by false pretenses or a false representation is not dischargeable when a creditor proves:

6

(1) the debtor made a false representation; (2) with the intent to deceive the creditor; (3) the creditor relied on the false representation; (4) the creditor's reliance was justifiable; and (5) the false representation resulted in damages to the creditor.

*In re Denbleyker*, 251 B.R. 891, 895 (Bankr. D. Colo. 2000) (citing *Field v. Mans*, 516 U.S. 59, 71 (1995)); *Fowler Brothers v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir. 1996).

"The term 'actual fraud' . . . encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1586 (2016).

The Tenth Circuit Bankruptcy Appellate Panel stated that "[w]hen a debtor intentionally engages in a scheme to deprive or cheat another of property or a legal right, that debtor has engaged in actual fraud and is not entitled to the fresh start provided by the Bankruptcy Code." *In re Vickery*, 488 B.R. 680, 690 (10th Cir. BAP (Colo.) 2013) (quoting *In re Vitanovich*, 259 B.R. 873, 877 (6th Cir. BAP 2001)).

Actual fraud is not limited to misrepresentations or misleading omissions. *Vickery*, 488 B.R. at 691 (citing *McClellan v. Cantrell,* 217 F.3d 890, 893 (7th Cir. 2000)). In order to except a debt based on actual fraud, the creditor must prove: (1) a fraud occurred; (2) the debtor intended to defraud; and (3) the fraud created the debt that is the subject of the dispute. *In re Jensen*, No. AP 17-01078, 2019 WL 2403105, at *8 n.63 (10th Cir. BAP (Colo.) June 7, 2019) (quoting *In re Glenn*, 502 B.R. 516, 531 (Bankr. N.D. Ill. 2013), *aff'd sub nom. Sullivan v. Glenn*, 526 B.R. 731 (N.D. Ill. 2014), *aff'd,* 782 F.3d 378 (7th Cir. 2015)). The plaintiff need not establish reliance, because "reliance is relevant only when the fraud takes the form of a misrepresentation." *Vickery*, 488 B.R. at 690 (internal quotation marks and citation omitted).

Fed.R.Civ.P. 9(b), as incorporated by Fed.R.Bankr.P. 7009, states "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." At a minimum, Rule 9(b) requires that a plaintiff set forth the "who, what, when, where and how" of an alleged fraud, and must set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof. *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726-27 (10th Cir. 2006). Rule 9(b) requires only the identification of the circumstances constituting fraud, and that it does not require any particularity in connection with an averment of intent, knowledge or condition of mind. *Schwartz v. Celestial Seasonings*, 124 F.3d 1246, 1252 (10th Cir. 1997).

Paragraphs 113-121 of the Complaint allege Schwalb Builders made false representations about its remodeling experience, qualifications, and capacity to remodel homes. The Complaint alleges Schwalb Builders fraudulently omitted material information about the status of the remodeling project, including not testing Plaintiff's home for asbestos before starting demolition. Schwalb Builders made these representations while it was operating as Defendant's alter-ego.

Paragraphs 122-124 of the Complaint allege the false representations or omissions were made with the intent to deceive the Plaintiffs; the Plaintiffs justifiably relied on the false representations; and the false representations or omissions resulted in damages.

Count II incorporates specific factual allegations of conduct set forth in paragraphs 13, 20, 27, 31-36, 45-51, 54-60, 62-65, 68-75, and 77-82.

Again, at the motion to dismiss stage, the Court does not weigh evidence, resolve factual disputes, decide credibility, or determine whether the plaintiff will ultimately prevail. The factual allegations in the Complaint identify the false representations or omissions with specificity, and when taken as true, plausibly state a claim for relief under 11 U.S.C. § 523(a)(2)(A).

### COUNT III NON-DISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(4) (FRAUD AND/OR DEFALCATION BREACH OF FIDUCIARY DUTY UNDER C.R.S. § 38-22-127)

11 U.S.C. § 523(a)(4) provides that a Chapter 7 debtor is not discharged for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

Plaintiffs' Count III is brought for "fraud or defalcation while acting in a fiduciary capacity" under 11 U.S.C. § 523(a)(4).

Prior to the Supreme Court's decision in *Bullock v. BankChampaign, N.A.,* 569 U.S. 267, 274 (2013), in the Tenth Circuit, to succeed on a claim for fraud or defalcation while acting in a fiduciary capacity, a creditor was required to prove: (1) the existence of an express or technical trust; (2) that Debtor owed a fiduciary duty arising from the trust; and (3) that Debtor breached the fiduciary duty by defalcation. *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1371-72 (10th Cir. 1996).

Whether a debtor is a fiduciary is determined by federal law, although state law is relevant to the inquiry. *Young*, 91 F.3d at 1371. In order to establish a fiduciary duty, a creditor must prove the existence of either an express or technical trust. *Id*.

Plaintiff relies on the Mechanics' Lien Trust Fund Statute to establish the existence of an express or technical trust. Colo.Rev.Stat. § 38-22-127(1) provides:

> All funds disbursed to any contractor or subcontractor under any building, construction, or remodeling contract or on any construction project shall be held in trust for the payment of the subcontractors, laborer or material suppliers, or laborers who have furnished laborers, materials, services, or labor, who have a lien, or may have a lien, against the property, or who claim, or may claim, against a principal and surety under the provisions of this article and for which such disbursement was made.

8

The Mechanics' Lien Trust Fund Statute satisfies the express or technical trust requirement and imposes a fiduciary duty necessary to establish a claim under 11 U.S.C. § 523(a)(4). *MacArthur Co. v. Cupit (In re Cupit)*, 514 B.R. 42, 49 (Bankr. D. Colo. 2014).

An individual in control of the finances of an entity is personally liable for the entity's violations of the Mechanics' Lien Trust Fund Statute. *See Alexander Co. v. Packard*, 754 P.2d 780, 782 (Colo. App. 1998).

Property owners, as well as subcontractors, material suppliers, and laborers, have standing to pursue violations of the Mechanics' Lien Trust Fund Statute. *Syfrett v. Pullen*, 209 P.3d 1167, 1171 (Colo. App. 2008).

In paragraphs 15-27, Plaintiffs alleged Defendant controlled Avi's Remodeling and Schwalb Builders and was in a position to authorize, and did authorize, the use of the funds subject to the trust for purposes of other than the payment of subcontractors or material suppliers. The funds were routinely converted into personal bank accounts and used for personal expenses including vacations and luxury events, thereby breaching the fiduciary duty by defalcation.

Plaintiff's Complaint states a plausible claim for relief for fraud or defalcation while acting in a fiduciary duty under 11 U.S.C. § 523(a)(4).

### COUNT IV NON-DISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(6) (WILLFUL AND MALICIOUS INJURY)

11 U.S.C. § 523(a)(6) provides that a Chapter 7 debtor is not discharged for willful and malicious injury by the debtor to another entity or the property of another entity. The creditor must establish that the conduct of the debtor was "willful and malicious" and caused an injury to an entity or the property of an entity.

Non-dischargeability under 11 U.S.C. § 523(a)(6) requires both a "willful injury" and a "malicious injury." *Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1129 (10th Cir. 2004) ("Without proof of *both*, an objection to discharge under that section must fail."). The United States Supreme Court has held that the term "willful" requires proof of a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury. *Kawaauhua v. Geiger*, 523 U.S. 57, 61 (1998).

"[T]he (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the *consequences* of an act," not simply "the act itself." *Id.* at 61-62.

The Tenth Circuit has held that "the term 'malicious' requires proof 'that the debtor either intend[ed] the resulting injury or intentionally [took] action that [was] substantially certain to cause injury.'" *Moore*, 357 F.3d at 1129 (quoting *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1164 (11th Cir. 1995)). The Tenth Circuit Bankruptcy Appellate Panel determined the definition of "malicious" in *Moore* was *dicta* and applied a different standard to determine whether there is a malicious injury. *First Am. Title Ins. Co. v. Smith (In re Smith)*, 618 B.R. 901, 918 (BAP 10th Cir. 2020). The totality of the circumstances

9

must be examined to determine whether the act was performed without justification or excuse.  The act must be wrongful.  *Id*. at 919-20.

Plaintiffs allege that Defendant intentionally and without excuse deceived Plaintiffs into a remodeling contract knowing it would cause substantial economic and non-economic harm, including loss of money, defective work, and toxic contamination exposure.

Plaintiffs Complaint alleges Defendant chose to not disclose material facts about Schwalb Builders to Plaintiffs from their first interaction; these material misrepresentations and omissions continued throughout the project in Plaintiffs' home with the intent to solicit payments to be put personal uses. Defendant chose to deceptively advertise Schwalb Builders' qualifications, experience, and capabilities to solicit Plaintiffs contract, deprive them of the value of their payments, and cause work to be done in Plaintiffs' home that was substantially certain would be defective. Defendant intentionally deprived Plaintiffs of the value of their contract payments to enrich himself.

Paragraphs 143-145 of the Complaint allege that the contract entered into between Plaintiffs and Schwalb Builders and the Defendant to act in good faith and deal fairly in performing or enforcing the express terms of the contract.  The Complaint alleges the Defendant intentionally caused Schwalb Builders to breach the duty of good faith and fair dealing by failing to: have a certified asbestos contractor determine whether it was safe to perform demolition work in the Tanners' home; take precautions to avoid releasing toxic and hazardous asbestos in throughout the Tanners' home; disclose to the Tanners that Schwalb Builders had released toxic and hazardous asbestos throughout the Tanners' home, and abate the toxic and hazardous asbestos contamination Schwalb Builders caused to be released into the Tanners' home, or pay for such abatement.

The Complaint alleges the Defendant acted willfully, maliciously, dishonestly, and outside of excepted commercial practices in the intentional breach of the contract.

Taking the well-pleaded allegations as true and in the light most favorable to the Plaintiff, the Complaint plausibly states a claim for relief that the contract was breached by the Defendant without justification or excuse with the intent to cause injuries excepting the claim from discharge under 11 U.S.C. § 523(a)(6).

### COUNT V NON-DISCHARGEABILITY UNDER 11 U.S.C. § 523(A)(6)
### (VIOLATION OF THE COLORADO CONSUMER PROTECTION ACT
### (C.R.S. § 6-1-113))

Plaintiff argues that the Colorado Consumer Protection Act, Colo.Rev.Stat. § 6-1-113 *et* seq ("CCPA") forms a basis for a claim under 11 U.S.C. § 523(a)(6). Colorado law provides a private right of action under the CCPA requiring a showing: (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of the defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury. *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998).

The well-pleaded allegations in paragraphs 147-162 of the Complaint, when taken as true, establish the Defendant engaged in deceptive trade practices in his course of business which affected the Plaintiffs and caused actual damages.  Specifically, paragraph 150 alleges in the ordinary course of business, Defendant violated the CCPA by falsely advertising Schwalb Builders' business experience, business ratings, capacity to handle asbestos releases, repeated failures to perform contract obligations, and concealing asbestos releases caused by their work. Defendant's conduct violated the CCPA by:

a. Representing that goods, food, services, or property were of a particular standard, quality, or grade, or that goods were of a particular style or model, when he knew should known that they are of another. C.R.S. § 6-1-105(1)(g).

b. Advertising goods, services, or property with intent not to sell them as advertised. C.R.S. § 6-1-105(1)(i).

c. Failing to disclose material information concerning goods, services, or property which information was known at the time of advertisement or sale when such failure to disclose such information was intended to induce the consumer to enter into a transaction. C.R.S. § 6-1-105(1)(u).

d. Either knowingly or recklessly engaging in unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent acts or practices. C.R.S. § 6-1-105(1)(rrr).

The Complaint further alleges the violation of the CCPA falls within the scope of 11 U.S.C. § 1123(a)(6) as it was willful, malicious, and bad faith conduct.

The Complaint states a plausible claim for relief under 11 U.S.C. § 523(a)(6).

### COUNT VI NON-DISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(6) (CIVIL THEFT (C.R.S. § 18-4-401))

Plaintiffs argue that civil theft under Colorado law forms a basis for a claim under 11 U.S.C. § 523(a)(6).  Colorado law provides for a private right of action for civil theft in Colo.Rev.Stat. §§ 18-4-401 and 18-4-405.

C.R.S. § 18-4-401 provides:

> (1)  A person commits theft when he or she knowingly obtains, retains, or exercises control over anything of value of another without authorization or by threat or deception; or receives, loans money by pawn or pledge on, or disposes of anything of value or belonging to another that he or she knows or believes to have been stolen, and:
> (a) Intends to deprive the other person permanently of the use or benefit of the thing of value;

11

(b) Knowingly uses, conceals, or abandons the thing of value in such manner as to deprive the other person permanently of its use or benefit;

(c) Uses, conceals, or abandons the thing of value intending that such use, concealment, or abandonment will deprive the other person permanently of its use or benefit;

(d) Demands any consideration to which he or she is not legally entitled as a condition of restoring the thing of value to the other person; or

(e) Knowingly retains the thing of value more than seventy-two hours after the agreed-upon time of return in any lease or hire agreement.

C.R.S. § 18-4-405 provides:

> All property obtained by theft, robbery, or burglary shall be restored to the owner, and no sale, whether in good faith on the part of the purchaser or not, shall divest the owner of his right to such property. The owner may maintain an action not only against the taker thereof but also against any person in whose possession he finds the property. In any such action, the owner may recover two hundred dollars or three times the amount of the actual damages sustained by him, whichever is greater, and may also recover costs of the action and reasonable attorney fees; but monetary damages and attorney fees shall not be recoverable from a good-faith purchaser or good-faith holder of the property.

The elements of theft under C.R.S. § 18-4-401 parallel the standards applied to determine whether an injury is willful and malicious.  Taking another's valuable property knowingly and deliberately and intending the injury of depriving them of its use and benefit, which is certainly reasonably foreseeable, falls within the terms willful and malicious. *See In re Tague,* 137 B.R. 495, 502 (Bankr. D. Colo. 1991); *Waknin v. Teta (In re Teta)*, No. 10-26493-MER, 2011 WL 2435948 (Bankr. D. Colo. June 16, 2011).

A defendant liable for civil theft necessarily meets the requirements of willful and malicious injury to the property interest of a plaintiff for the purposes of dischargeability under 11 U.S.C. § 523(a)(6). *C-Ball Ventures, LLC v. Oltmann (In re Oltmann)*, 505 B.R. 311, 318 (Bankr. D. Colo. 2014).

Paragraph 169 of the Complaint alleges the Defendant, through his management and control of Schwalb Builders, knowingly retained, obtained, or exercised control over Plaintiffs' funds by causing the funds to be transferred to Defendant's alter-ego to permanently deprive Plaintiffs of the funds.

The Complaint plausibly states a claim for relief under 11 U.S.C. § 523(a)(6).

12

## CONCLUSION

For the reasons stated above, it is

ORDERED that Defendant's Motion to Dismiss Adversary Proceeding (Doc. 4) is DENIED.  It is

FURTHER ORDERED that Defendant shall file an answer or other responsive pleading on or before **June 17, 2026.**

Dated this  3rd  day of ___June___, 2026.

BY THE COURT:

_____

Joseph G. Rosania, Jr.
United States Bankruptcy Judge